UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MARC EINSOHN,

                         Plaintiff,                                   **MEMORANDUM AND ORDER**

              v.                                                      19-CV-2660 (RPK) (RER)

NEW YORK CITY DEPARTMENT OF
EDUCATION and HOWARD KWAIT,

                         Defendants.
--------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Marc Einsohn brings this action alleging that defendants Howard Kwait and the

New York City Department of Education ("DOE") discriminated and retaliated against him

because of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§ 12101 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code

§ 8-101 *et seq*.  Defendants also allegedly retaliated against plaintiff for engaging in protected

speech.  *See* Compl. (Dkt. #1).  Defendants have moved for summary judgment on all of

plaintiff's claims.  *See* Defs.' Mem. in Supp. of Mot. for Summ. J. (Dkt. #35) ("Defs.' Mem.").

For the reasons that follow, defendants' motion is granted in part and denied in part.

## BACKGROUND

**I.    Factual Background**

      The following facts are taken from defendants' Rule 56.1 statement and relevant portions

of the record and are undisputed unless otherwise noted.

      Plaintiff is employed by the DOE as an assistant principal at John Browne High School

("JBHS") in New York.  Defs.' Rule 56.1 Statement ¶ 1 (Dkt. #34).  Principal Howard Kwait

was plaintiff's supervisor from September 2010 to May 11, 2018.  *Id.* ¶ 4.  Plaintiff is in charge

of the JBHS foreign languages department.  *See id.* ¶ 1.

1

On June 7, 2017, plaintiff informed Kwait that plaintiff "would be taking off . . . June 12[] and June 13[] . . . for immediate medical care." *Id.* ¶ 14. Kwait approved plaintiff's request for leave. *Id.* ¶ 15.

Sometime later that month, Kwait and plaintiff met to talk about plaintiff's teaching responsibilities for the upcoming school year. *Id.* ¶ 13. Plaintiff had scheduled himself to teach one second-period Spanish class during the 2017-2018 school year. *See* Decl. of Isaac S. Baskin Ex. B at 18:4-8 (Dkt. #33-2). But Kwait assigned plaintiff to teach two Spanish classes during periods six and eight. *See* Defs.' Rule 56.1 Statement ¶ 17; Decl. of Isaac S. Baskin Ex. H (Dkt. #33-8); *id.* Ex. I (Dkt. #33-9). Plaintiff's period six class was scheduled in Room 150 and his period eight class was scheduled in a trailer outside the school building. Defs.' Rule 56.1 Statement ¶ 20. Plaintiff's office was in Room 252. *Id.* ¶ 21.

During the 2017-2018 school year, plaintiff was the only assistant principal assigned to supervise the JBHS foreign languages department and the only assistant principal licensed to teach Spanish at JBHS. *Id.* ¶¶ 2-3. That year, JBHS enrolled 3,600 students. *Id.* ¶ 10. Due to high enrollment, some classes were held in trailers, and students started and ended the school day at three different times. *See* Decl. of Isaac S. Baskin Ex. F at 50:18-51:3 (Dkt. #33-6); Defs.' Rule 56.1 Statement ¶¶ 11-12.

Plaintiff sent Kwait an email on August 28, 2017, asking that Kwait reduce plaintiff's teaching load to one class. *See* Decl. of Isaac S. Baskin Ex. I. The record does not include Kwait's response. But Kwait appears to have denied plaintiff's request. *See id.* Ex. H.

Two days later, plaintiff emailed Kwait about a surgery that plaintiff had scheduled for September 5, 2017. Defs.' Rule 56.1 Statement ¶ 22. Plaintiff told Kwait that plaintiff would need about six weeks to recover. *See id.* ¶ 23. Plaintiff anticipated that he would return to work

2

on November 1, 2017. *See* Decl. of Isaac S. Baskin Ex. C (Dkt. #33-3). The DOE subsequently approved plaintiff's request for sick leave. *See* Defs,' Rule 56.1 Statement ¶ 26. While plaintiff was on leave, Kwait assigned other teachers to cover plaintiff's classes. *Id.* ¶ 29.

On September 5, 2017, plaintiff had the right side of his colon surgically removed. *See id.* ¶ 7; Decl. of Isaac S. Baskin Ex. B at 19:7-13. Dr. Owen Su performed the surgery. *See* Decl. of Isaac S. Baskin Ex. B at 19:14-15; Defs.' Rule 56.1 Statement ¶ 27. Plaintiff states that he suffered from complications that limited his ability to walk, bend, and stand. *See* Decl. of Isaac S. Baskin Ex. B. at 20:17-21; Defs.' Rule 56.1 Statement ¶¶ 8, 30.

Dr. Su faxed a letter to Kwait's payroll secretary on November 1, 2017, explaining that plaintiff could return to work that day. *See* Decl. of Isaac S. Baskin Ex. E (Dkt. #33-5). The letter stated that plaintiff could not "participate in hall duty or hall patrol and may not be given more than one teaching assignment." *Ibid.* Kwait scheduled a meeting for November 10, 2017, to discuss the proposed accommodations with plaintiff and plaintiff's union representative. Defs.' Rule 56.1 Statement ¶ 32.

In addition, Kwait and Superintendent Elaine Lindsey requested a medical evaluation of plaintiff pursuant to New York Education Law § 2568. Defs.' Rule 56.1 Statement ¶¶ 33-34. That statute permits superintendents of certain school districts in New York to require employees "to submit to a medical examination by a physician or school medical inspector of the board[] in order to determine the mental or physical capacity of such person to perform his duties." N.Y. Educ. Law § 2568. Plaintiff's evaluation was eventually scheduled for December 13. Defs.' Rule 56.1 Statement ¶ 37.

Plaintiff's condition worsened, and on November 10, 2017, Dr. Su faxed Kwait a letter stating that plaintiff was "unable to work" and asking Kwait to "extend [plaintiff] all reasonable

considerations." Decl. of Isaac S. Baskin Ex. G (Dkt. #33-7); *see id.* Ex. B at 31:1-9. Eleven days later, plaintiff emailed Kwait a request to take leave until January 2, 2018. Defs.' Rule 56.1 Statement ¶ 38. Kwait endorsed and the DOE approved plaintiff's request. *See id.* ¶¶ 39-40.

The DOE's medical inspector examined plaintiff on December 13, 2017, in accordance with Section 2568. *See id.* ¶ 41. As reported in the DOE's records, plaintiff requested "[n]o more than [one] teaching assignment in a location near office in [e]arly part of the day[] [and] [n]o participation in [h]all duty/[h]all [p]atrol." Decl. of Isaac S. Baskin Ex. M (Dkt. #33-13). The DOE doctor found that plaintiff's functional limitations were to "[a]void excessive walking[] [and] long term standing/[b]ending (due to mobility [i]ssue)." *Ibid.* The doctor concluded that plaintiff's accommodation request should be sent to the DOE's Office of Equal Opportunity and Diversity ("OEO") "to determine whether the request can be reasonably accommodated." *Ibid.*; Defs.' Rule 56.1 Statement ¶ 44.

Plaintiff's accommodation request was then forwarded to the deputy director of the OEO, Matthew Riordan. Defs.' Rule 56.1 Statement ¶ 45. Riordan asked Kwait whether plaintiff's requests could be accommodated. *Id.* ¶ 46. Kwait responded by email that some of plaintiff's accommodation requests were feasible but others put "an undue burden and hardship onto the school." *See* Decl. of Isaac S. Baskin Ex. H.

Kwait said that plaintiff's classes could be relocated from Room 150 and the outside trailer to Room 245—classroom much closer to plaintiff's office in Room 252. *Ibid.* Kwait also permitted plaintiff to remain seated while teaching. *Ibid.*

But Kwait explained that plaintiff's request to teach one class could not be accommodated because JBHS was "already short licensed Spanish teachers." *Ibid.* Kwait also noted that during plaintiff's leave, his classes were "taught by teachers in other departments at a

cost of $12,500 per teacher." *Ibid.* Kwait suggested that the "best interests of . . . students" and the "school budget" prevented further accommodation. *Ibid.*

Kwait also rejected plaintiff's request to teach at an earlier time. *See ibid.* Kwait explained that due to plaintiff's and students' schedules, plaintiff's request to teach at an earlier time could only be accommodated if his classes were in periods two and three. Kwait said that he could not "accommodate this [modification] based on the needs of our school," and that the granting the request would cause "an undue hardship." *Ibid.* He did not explain further why that was so. *Ibid.*

Finally, Kwait stated that the school could not accommodate plaintiff's request to be relieved from hall duty. *See ibid.* Kwait pointed out that there had been a stabbing at JBHS in April 2017 and a gun in the building in November. *See ibid.* And Kwait noted that the DOE's Office of Safety and Youth Development had conducted a "comprehensive safety review" of JBHS and had "stated the need for [assistant principals] to serve as a part of floor teams to help contribute to a safe and secure learning environment." *Ibid.* But Kwait thought that plaintiff could be accommodated "by placing a chair in the corridor for the minutes before classes let out, passing[,] and a few minutes into the period until the hallways clear" so that plaintiff could serve "as another pair of eyes with a radio who can assist from [a] seated position . . . if mobility may be an issue." *Ibid.*

Following Kwait's email, the OEO accommodated plaintiff by moving his classes to Room 245, "permitting [plaintiff] to sit as needed during instructional time, and providing [plaintiff] with a chair so that he can be seated when performing hall duty." *Id.* Ex. N (Dkt. #33-14). The OEO found that plaintiff's other requested accommodations "would present an undue hardship for the school." *Ibid.*

On January 21, 2018, plaintiff went back to work with the accommodations provided by the OEO. Defs.' Rule 56.1 Statement ¶ 65. In early May, Kwait was removed from JBHS and replaced with a different principal. *Id.* ¶¶ 66-67. Plaintiff's performance was rated "satisfactory" for the 2017-2018 school year. *Id.* ¶ 68.

## II.        Procedural Background

Plaintiff filed a charge of disability discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against the DOE and Kwait, *id.* ¶ 69, and the EEOC issued plaintiff a "right-to-sue" letter, *id.* ¶ 71.

Plaintiff then filed this suit. *See* Compl. He brings three causes of action against Kwait and the DOE. Plaintiff first claims that defendants violated the ADA. *See id.* ¶¶ 21-23. Second, plaintiff alleges that by discriminating against plaintiff, defendants engaged in an unlawful discriminatory practice in violation of the NYCHRL. *See id.* ¶¶ 26-29. Third, plaintiff brings a claim entitled "Violation of Article 1 Section 8 of the New York State Constitution," in which he alleges that defendants "violat[ed] … Plaintiff's rights to free speech as guaranteed under the First Amendment to the United States Constitution." *Id.* ¶¶ 24-25. Plaintiff elsewhere states that defendants violated plaintiff's right to free speech under Article I, Section 8 of the New York State Constitution by "unlawfully discriminat[ing] and retaliat[ing]" against plaintiff. *Id.* ¶ 25. Plaintiff seeks damages, unspecified injunctive relief, and attorney's fees and costs. *Id.* at 8.

At the close of discovery, defendants moved for summary judgment on all of plaintiff's claims.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where "the burden of persuasion at trial would be on the non-moving party," the movant "may satisfy his burden of production" either "(1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers[.]" Fed. R. Civ. P. 56(c)(1)(A). I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted).

## DISCUSSION

Defendants move for summary judgment on plaintiff's ADA and NYCHRL claims for failure to accommodate, disparate treatment, hostile work environment, and retaliation. *See* Defs.' Mem. Defendants also move for summary judgment on plaintiff's retaliation claims under the First Amendment and the New York State Constitution. *See ibid.* Defendants' motion

is granted with respect to plaintiff's ADA disparate-treatment claim and any First Amendment claim.   Plaintiff's ADA claim against Kwait, his state constitutional claim, and his hostile work environment claims are withdrawn and therefore dismissed without prejudice.  *See* Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 1 n.1 (Dkt. #37) ("Pl.'s Mem."); *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006).   Defendants' motion is denied with respect to plaintiff's remaining claims.

## I.      Failure-to-Accommodate Claims

Factual disputes preclude summary judgment on plaintiff's failure-to-accommodate claims under the ADA and the NYCHRL.

### A.      ADA

"The ADA . . . require[s] an employer to afford reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer."  *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (citing 42 U.S.C. § 12112(b)(5)(A)).   To establish a prima facie case of disability discrimination arising from a failure to accommodate, a plaintiff must demonstrate that "(1) he is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Ibid.* (alterations  and citation omitted).  If the plaintiff proves his prima facie case, the burden "shifts to the defendant to rebut the reasonableness of the proposed accommodation," which "is in essence equivalent to the burden of showing, as an affirmative defense, that the proposed accommodation would cause the defendant to suffer an undue hardship."  *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 76 (2d Cir. 2016) (internal quotation marks, citations and alterations omitted).

8

An employer that has taken or offered measures to accommodate a plaintiff's disability "is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'" *Noll*, 787 F.3d at 94 (citation omitted). A reasonable accommodation is not necessarily "a perfect accommodation or the very accommodation most strongly preferred by the employee." *Id.* at 95. Rather, "[t]he hallmark of a reasonable accommodation is effectiveness." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d Cir. 2015). A "reasonable accommodation" therefore "enable[s] an individual with a disability . . . to perform the essential functions of [her] position" or "enjoy equal benefits and privileges of employment as are enjoyed by . . . other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1); *see Noll*, 787 F.3d at 94 (quoting 29 C.F.R. § 1630.2(o)(1)); *Norman v. NYU Langone Health Sys.*, No. 20-3624-cv (L), 20-3745-cv (XAP), 2021 WL 5986999, at *3 (2d Cir. Dec. 17, 2021) (summary order). Whether an accommodation is reasonable is "a 'fact-specific' question" that is rarely suited for disposition on summary judgment. *Noll*, 787 F.3d at 94.

Here, defendants argue that summary judgment is warranted because the accommodations provided to plaintiff were plainly reasonable and because plaintiff's proposed accommodations would have placed an undue burden on the school. *See* Defs.' Mem. 5-9. Because factual disputes remain about both the reasonableness of the accommodations and the burden of plaintiff's proposal, summary judgment is denied.

A reasonable factfinder could conclude that the accommodations that defendants provided to plaintiff were not reasonable. Defendants moved plaintiff's classes closer to his office, let plaintiff sit while teaching, and gave plaintiff a chair for hall duty. *See* Decl. of Isaac S. Baskin Ex. N. But those accommodations fell short of those recommended by plaintiff's

physician, who stated that plaintiff should not teach more than one class or participate in hall duty at all. *Id.* Ex. E; *cf. Williams v. Geiger*, 447 F. Supp. 3d 68, 83 (S.D.N.Y. 2020) (finding accommodations that were consistent with physician's opinion plainly reasonable); *Wenc v. New London Bd. of Educ.*, No. 14-CV-840 (VAB), 2016 WL 4410061, at *15 (D. Conn. Aug. 16, 2016) (same), *aff'd*, 702 F. App'x 27 (2d Cir. 2017).  Dr. Su did not explain that opinion.  *See Bielski v. Green*, 674 F. Supp. 2d 414, 425 (W.D.N.Y. 2009).  But plaintiff gave additional detail to support the recommendation against hall duty, stating that he could not risk any contact with the area surrounding his wound and that thousands of students moved through the halls during passing times.  *See* Decl. of Isaac S. Baskin Ex. B at 39:2-3, 52:4-11.  Given that record evidence, a reasonable jury could conclude that the sitting accommodations did not "sufficiently address the limitations of the disabled employee," *Kaganovich v. McDonough*, 547 F. Supp. 3d 248, 270 (E.D.N.Y. 2021) (citation omitted), and were not "effective[]," *Dean*, 804 F.3d at 189.

There are also genuine disputes about whether that proposed accommodation posed an "undue hardship" to defendants. *Wright*, 831 F.3d at 76.  The ADA defines "undue hardship" as "an action requiring significant difficulty or expense" in light of "the nature and cost of the accommodation," "the overall financial resources of the facility[,] . . . the number of persons employed at [the] facility[,] the effect on expenses and resources, or the impact otherwise of [the] accommodation [on] the operation of the facility," among other factors.  42 U.S.C. § 12111(10); *see Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 791-92 (S.D.N.Y. 2020).  The employer must make "a detailed showing" that the proposed accommodation would require significant difficulty or expense. *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 121-22 (2d Cir. 2004).

A genuine dispute of material fact exists as to whether exempting plaintiff from hall duty would have imposed an undue hardship.  Defendants argue that they "could not exempt plaintiff from participating in hall duty entirely[] due to school safety concerns."  Defs.' Mem. 6.  Yet Kwait's email to Riordan only indicated that other assistant principals participated in hall duty, as recommended by a safety review of JBHS—not that *all* assistant principals *had* to take shifts to ensure school safety.  *See* Decl. of Isaac S. Baskin Ex. H.  And Kwait merely testified that if plaintiff "could be seated with a walkie-talkie," then plaintiff could serve as "another pair of eyes and ears, recognizing [that] . . . [JBHS] had a stabbing and a gun in the school."  *Id.* Ex. F. at 11:9-12.  Defendants do not explain why student safety required every single assistant principal to participate in hall duty, or why plaintiff's shift could not have been covered by another faculty member.  Nor have defendants produced other "concrete evidence indicating the likely impact of [plaintiff's] accommodation" on school operations.  *Rodal*, 369 F. 3d at 122. Even assuming that the "not-insignificant responsibilities" of hall duty would fall on other school employees if plaintiff were exempted, I cannot "conclude as a matter of law that the burden was so disproportionately heavy as to absolve [defendants] from [their] . . . obligations under the ADA."  *Ibid.*  Since genuine issues of material fact exist concerning at least this one accommodation, summary judgment is denied on plaintiff's failure-to-accommodate claim under the ADA.

**B.     NYCHRL**

For the same reasons, defendants are not entitled to judgment on plaintiff's NYCHRL claim for failure to accommodate his disability.  The same basic framework governs failure-to-accommodate claims under the ADA and NYCHRL.  *See Frilando v. N.Y.C. Transit Auth.*, 463 F. Supp. 3d 501, 514 (S.D.N.Y. 2020).  But claims under the NYCHRL must be considered "independently from and more liberally than their federal . . . counterparts."  *Wells v. Achievement Network*, No. 18-CV-6588 (KPF), 2021 WL 810220, at *11 (S.D.N.Y. Mar. 2,

2021) (internal quotation marks omitted) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)).  Under the NYCHRL, "the employer bears the burden of proving that the [plaintiff's proposed] accommodation was overly burdensome or that the plaintiff could not perform the job even with a reasonable accommodation." *Stryker v. HSBC Secs. (USA)*, No. 16-CV-9424 (JGK), 2020 WL 5127461, at *12 (S.D.N.Y. Aug. 31, 2020).  For substantially the reasons that defendants have not shown there is no genuine dispute of material fact about the reasonableness of plaintiff's proposed accommodation or its burdensomeness with respect to plaintiff's ADA claim, defendants have not carried their summary-judgment burden with respect to plaintiff's analogous NYCHRL claim.

Defendants argue that plaintiff abandoned his NYCHRL failure-to-accommodate claim because plaintiff failed to address defendants' motion for summary judgment on that claim.  *See* Defs.' Reply 2 (Dkt. #40).  "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) ("[W]hen appropriate," a "court may . . . infer from a party's partial opposition that relevant claims . . . that are not defended have been abandoned" on summary judgment).  Plaintiff does not mention the NYCHRL failure to accommodate claim in his summary judgment papers.  *See* Pl.'s Mem.  But plaintiff affirmatively withdrew certain claims, while making no such withdrawal request with respect to the NYCHRL failure-to-accommodate claim.  *See id.* at 1 n.1, 14.  Moreover, as I just explained, the analysis for ADA and NYCHRL failure to accommodate claims is essentially the same.  And plaintiff did respond to defendants' arguments with respect to the ADA.  Therefore, I do not infer that plaintiff abandoned the NYCHRL claims.

12

Defendants' motion for summary judgment on the NYCHRL failure-to-accommodate claim is denied.

## II.     Disparate Treatment Claims

Defendants' motion for summary judgment is granted on plaintiff's disparate-treatment claims under the ADA and denied on plaintiff's disparate-treatment claims under the NYCHRL.

### A.     ADA

Plaintiff cannot prove a prima facie case of disparate-treatment discrimination under the ADA.  The *McDonnell Douglas* burden-shifting framework applies to such claims.  *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019).  To establish a prima facie case of disparate treatment on the basis of disability, a plaintiff must show, among other things, that "he suffered [an] adverse employment action because of his disability." *Ibid.* (quoting *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013)). An adverse employment action in this context is "a materially adverse change in the terms and conditions of employment." *Vale v. Great Neck Water Poll. Control Dist.*, 80 F. Supp. 3d 426, 434 (E.D.N.Y. 2015); *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015); *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).  Such an action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Fox*, 918 F.3d at 71 (quoting *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002)).  For example, an adverse employment action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Ibid.* (alteration omitted).  Plaintiff's evidence is insufficient to establish such a change.

Plaintiff first points to his assignment to hall duty, but this assignment does not qualify. Other assistant principals performed hall duty, as had plaintiff in previous years. *See* Decl. of Isaac S. Baskin Ex. H; Decl. of Thomas Ricotta Ex. A at 30:14-17 (Dkt. #37-3). Therefore, plaintiff has not shown that hall duty was a materially adverse change in his employment, *Vale*, 80 F. Supp. 3d at 434, as opposed to the status quo, *see Townsend v. First Student*, No. 18-CV-1684 (VLB), 2021 WL 4798825, at *9 (D. Conn. Oct. 14, 2021); *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005); *Smith v. City of New York*, No. 03-CV-1252 (NRB), 2008 WL 1970316, at *13 (S.D.N.Y. May 6, 2008).

Plaintiff's assignment to teach two afternoon classes was not a materially adverse change in the terms and conditions of plaintiff's employment, either. Under certain circumstances, assignment of a "disproportionately heavy workload" may constitute an adverse employment action. *Feingold*, 366 F.3d at 153. But plaintiff has not pointed to evidence that establishes he was assigned such a workload. Although plaintiff testified that "[i]t was common practice" that assistant principals "always taught one class," Decl. of Isaac S. Baskin Ex. B at 62:4-5, a two-class assignment seems consistent with plaintiff's employment contract, which "calls for up to [three] teaching assignments based upon the number of teachers supervised by the assistant principal," *id.* Ex. H. Plaintiff was therefore assigned *less* than the maximum permitted under his job description. *See Vega*, 801 F.3d at 88 (finding plaintiff alleged adverse employment action on basis of disproportionate workload where assignment "exceed[ed] [school] [d]istrict policy" (internal quotation marks omitted)); *see also Forest v. N.Y. State Off. of Mental Health*, 672 F. App'x 42, 45 n.3 (2d Cir. 2016) (summary order) ("[A]ssignments within an employee's job description are generally not materially adverse" even under broader retaliation standard.); Decl. of Isaac S. Baskin Ex. B. at 65:11-24 (plaintiff's testimony that during a later school year

14

not at issue in this case, plaintiff was assigned to teach the maximum load).  While plaintiff asked Kwait to reduce his teaching load after Kwait assigned him "additional supervisory responsibilities," Decl. of Isaac S. Baskin Ex. I, plaintiff does not argue or point to evidence that his total volume of work exceeded what other assistant principals performed—or that the increase in his teaching hours resulted in a heavily disproportionate workload.  *See, e.g.*, *Collazo v. County of Suffolk*, 163 F. Supp. 3d 27, 44 (E.D.N.Y. 2016) (granting summary judgment in part because plaintiff had not "adduced facts that demonstrate being required to [perform a certain task] rendered her workload 'disproportionately heavy'").

Unlike cases where employees put forward evidence they were reassigned a colleague's work, *see Feingold*, 366 F.3d at 153; *Avillan v. Potter*, No. 04-CV-9019 (PKC) (FM), 2006 WL 3103309, at *11 (S.D.N.Y. Nov. 1, 2006), told to work more hours than other employees, *see Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014), or assigned to do alone a job that would normally be performed by multiple employees, *see Joseph v. Brooklyn Dev. Disabilities Servs. Off.*, No. 12-CV-4402 (PKC) (CLP), 2016 WL 6700831, at *20 (E.D.N.Y. Sept. 30, 2016); *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016), plaintiff has not put forward evidence establishing more than that he was assigned a different blend of work tasks than other assistant principals.  And an alteration of job responsibilities alone does not constitute an adverse employment action.  *See Davis*, 804 F.3d at 235.  Plaintiff's evidence is therefore insufficient to prove that the two-class teaching assignment was an adverse employment action.

Likewise, Kwait's threats to give plaintiff a poor performance rating are not enough to establish a prima facie case.  *See* Pl.'s Mem. 11.  "[A] negative performance review, without more, does not represent an adverse employment action."  *Chung v. City Univ. of N.Y.*, 605 F.

App'x 20, 22 (2d Cir. 2015) (summary order).  And plaintiff has not pointed to evidence that the mere threat of a negative review had a materially adverse effect on his employment.  *Davis*, 804 F.3d at 235.

Plaintiff's disciplinary meetings and letters are not adverse employment actions, either. Disciplinary measures rise to adverse employment actions only where they affect the terms and conditions of plaintiff's employment.  *See Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011) (summary order); *see Buon v. Spindler*, No. 19-CV-6760 (NSR), 2021 WL 1056010, at *6 (S.D.N.Y. Mar. 18, 2021) *Adams-Martin v. Conn. Dep't of Dev. Servs.*, No. 10-CV-99 (VLB), 2012 WL 878306, at *9-10 (D. Conn. Mar. 14, 2012); *Gear v. Dep't of Educ.*, No. 7-CV-11102 (NRB), 2011 WL 1362093, at *3 (S.D.N.Y. Mar. 30, 2011).

Plaintiff's only argument that disciplinary measures had such an effect here is his claim that the disciplinary letters "barred him from [pre]-session work, and thus cost him income." Pl.'s Mem. 9.  That argument appears to be based on plaintiff's testimony that the disciplinary letters rendered plaintiff ineligible for "[pre-session] opportunities," or "opportunities to supervise other activities and other programs."  Decl. of Isaac S. Baskin Ex. B at 66:3-20.  But no further details appear in the record about what opportunities plaintiff might have been denied, the application process for those opportunities, or the effect of disciplinary letters on that process.  Nor is there any evidence that plaintiff even attempted to obtain "pre-session work" and was denied because of the disciplinary letters.  Such a vague and conjectural allegation in plaintiff's deposition testimony does not raise a triable issue of fact about the effects of the disciplinary letters.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (finding summary judgment may be granted where nonmoving party's evidence is "merely colorable" or "not significantly probative").

Finally, plaintiff is wrong that defendants' actions, "taken as a whole, created an atmosphere of adverse employment actions" sufficient to prove a prima facie case. Pl.'s Mem. 9. Plaintiff relies on a Second Circuit case that held, in the context of a First Amendment retaliation claim, that "seemingly minor incidents" may combine "to form the basis of a constitutional retaliation claim once they reach a critical mass." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002). But even assuming "minor incidents" can also be aggregated to establish an adverse employment action in the ADA context, an adverse employment action must still have a materially adverse effect on the terms and conditions of employment. *Vega*, 801 F.3d at 85; *Davis*, 804 F.3d at 235. Whether the incidents plaintiff describes are considered separately or together, plaintiff has not pointed to sufficient evidence of such a material effect. Accordingly, defendants are entitled to summary judgment on plaintiff's claim of disparate treatment under the ADA.

### B.     NYCHRL

Plaintiff's disparate-treatment claims survives summary judgment under the more liberal standards of the NYCHRL. To prove an NYCHRL claim for disparate treatment, a plaintiff "need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of a protected trait." *Duarte v. St. Barnabas Hosp.*, 265 F. Supp. 3d 325, 346 (S.D.N.Y. 2017) (internal quotation marks and citation omitted). "[D]ifferential treatment" that is actionable under the NYCHRL "*may* take the form of tangible employment actions such as hiring or firing," *Forrester v. Corizon Health, Inc.*, 278 F. Supp. 3d 618, 626 (E.D.N.Y. 2017) (internal quotation marks and citation omitted, emphasis added), but "the challenged conduct need not . . . be 'tangible,'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted). "[E]ven a single comment may be

actionable in the proper context, for purposes of the NYCHRL." *Syeed v. Bloomberg L.P.*, --- F. Supp. 3d ----, 2021 WL 4952486, at *14 (S.D.N.Y. Oct. 25, 2021) (citation omitted).

In addition to demonstrating differential treatment, the plaintiff must establish that discrimination was "one of the motivating factors, even if it was not the sole motivating factor, for [plaintiff's] unequal treatment." *Ibid.* (internal quotation marks and citation omitted). Once plaintiff establishes disparate treatment, defendants are therefore entitled to summary judgment only where "the record establishes as a matter of law that discrimination played *no role* in [their] actions." *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 246 (E.D.N.Y. 2015) (internal quotation marks and alteration omitted) (quoting *Mihalik*, 715 F.3d at 110 n.8).

A reasonable jury could conclude that defendants treated plaintiff "less well" than his colleagues by giving plaintiff a double course load, and that discrimination played at least some role in that assignment. During the 2017-2018 school year, all other assistant principals taught one class except for plaintiff and a "Mr. Perry" who "taught a double period class[] by choice." Decl. of Isaac S. Baskin Ex. B at 61:14-23. And plaintiff testified that "[i]t was common practice" that assistant principals "always taught one class." *Id.* Ex. B at 62:4-5. Plaintiff also testified that another assistant principal who came back from leave was assigned one class. *Id.* Ex. B at 53:14-18. Although defendants have articulated non-discriminatory reasons for giving plaintiff two classes, including the limited number of JBHS teachers licensed to teach Spanish, *see id.* Ex. H, a jury could still conclude that disability discrimination played *some* role in plaintiff's assignment—particularly in light of the timing of plaintiff's assignment. Plaintiff testified that he notified Kwait about his surgery in June 2017, and plaintiff appears to have received his teaching assignment over the summer. *See id.* Ex. B at 19:2-6; *id.* Ex. I. Since plaintiff had always taught one class before the summer 2017 assignment, *see id.* Ex. B at 63:18,

and no other assistant principal was forced to teach two classes, a rational factfinder could conclude that plaintiff's disability contributed to the double load.

Plaintiff has not abandoned the NYCHRL disparate-treatment claim for similar reasons as discussed with respect to his NYCHRL failure-to-accommodate claim. *See* Defs.' Reply 2. Although the substantive standards for NYCHRL and ADA disparate-treatment claims differ, the legal analysis is similar enough that plaintiff's arguments with respect to the ADA could be understood as applying the NYCHRL. Plaintiff also affirmatively withdrew some claims but not the NYCHRL disparate treatment claim. Therefore, I do not infer that plaintiff had abandoned the NYCHRL disparate treatment claim. *See Kovaco*, 834 F.3d at 143.

## III.    Retaliation Claims

Summary judgment is denied on plaintiff's retaliation claims.

### A.    ADA

Retaliation claims under the ADA are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To establish a prima facie case of retaliation, plaintiff must establish that "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Ibid.* Importantly, the adverse employment action must occur "after" and be "causally connected to" plaintiff's "engagement in a protected activity." *Fox*, 918 F.3d at 72.

Adverse employment actions are defined more broadly for purposes of an ADA retaliation claim than a disparate-treatment claim. *Sherman v. County of Suffolk*, 71 F. Supp. 3d 332, 352-53 (E.D.N.Y. 2014) (collecting cases). In the retaliation context, a plaintiff need only show "that a reasonable employee would have found the challenged action materially adverse,

19

which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 353 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014).

After plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Treglia*, 313 F.3d at 721. If the defendant meets that burden, the plaintiff "must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Ibid.* (citation omitted).

Factual disputes exist about whether defendants took an adverse action against plaintiff because of plaintiff's request for accommodations. In January 2018, after plaintiff engaged in protected activity by requesting accommodations, *see Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002), Kwait met with plaintiff, and denied plaintiff's accommodation request in part, *see* Decl. of Thomas Ricotta Ex. A at 32:11-24, 33:11-15, 34:10-22. Defendants appear to admit that Kwait also "inform[ed] [p]laintiff in January 2018 that he [might] receive an 'Unsatisfactory' rating at the end of the school year." Defs.' Reply 10. The record is unclear as to whether Kwait made that threat at the meeting about plaintiff's accommodation request or at some other time in January 2018. *See* Decl. of Thomas Ricotta Ex. A at 34:23-35:11. But a reasonable factfinder could conclude that this threat came close enough in time to plaintiff's accommodation request to support an inference of causation at first stage of the *McDonnell Douglas* analysis. *See, e.g.*, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (noting that five months could be sufficient temporal proximity to establish causation at *prima facie* stage). And while a threat alone is not an adverse employment action in the context

20

of a disparate-treatment claim, *see, e.g.*, *Early v. Wyeth Pharmaceuticals, Inc.*, 603 F. Supp. 2d 556, 574 (S.D.N.Y. 2009), a reasonable jury could find it to be a threat under the more liberal standards for adverse employment actions in the context of retaliation claims. That is, a reasonable jury could conclude that Kwait's threat may have deterred a reasonable worker from engaging in protected activity. S*ee Krinsky v. Abrams*, No. 01-CV-5052 (SLT) (LB), 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007), *aff'd*, 305 F. App'x 784 (2d Cir. 2009) (summary order).

At the second stage of the *McDonnell Douglas* analysis, defendants argue that Kwait threatened plaintiff with an unsatisfactory rating because of Kwait's "concern[] about [p]laintiff's performance" and desire for plaintiff "to improve." Defs.' Reply 10. But assuming that this explanation satisfies defendants' burden "to articulate a legitimate, non-retaliatory reason" for Kwait's threat at the second step of *McDonnell Douglas*, summary judgment would be inappropriate because a reasonable factfinder could question the plausibility of that explanation. *See Treglia*, 313 F.3d at 721. As a result of his medical leave, plaintiff only worked approximately six school days between September and late January 2018—when Kwait threatened plaintiff with an unsatisfactory rating for the year. *See* Defs.' Rule 56.1 Statement ¶¶ 28, 35, 40 (explaining that plaintiff was no medical leave from September 5, 2017, to November 1, 2017, and from November 9, 2017, to January 21, 2018). And defendants have made no specific allegations of shortcomings occurring during those days that plaintiff worked, from November 1 to November 9, 2017. A factfinder could reasonably question the plausibility of defendants' performance-related explanation for Kwait's threat, given how few days plaintiff had worked in the academic year in which the threat was made and defendants' failure to point to specific shortcomings during that year.

Moreover, as noted above, Kwait allegedly threatened plaintiff around the time that the parties met to discuss plaintiff's accommodation request.  *See* Defs.' Reply 10; Decl. of Thomas Ricotta Ex. A at 32:11-24, 33:11-15, 34:10-35:11.  Such a "strong temporal correlation" between plaintiff's request for accommodations and Kwait's alleged threat, coupled with a basis for the "trier of fact to doubt the persuasiveness of the [defendants'] proffered evidence," is enough to create a triable issue of fact as to pretext.  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 770 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *see Kwan v. Andalex Grp. LLC*, 847 (2d Cir. 2013).  Accordingly, summary judgment is denied on plaintiff's ADA retaliation claim.

### B.   NYCHRL

Defendants' motion for summary judgment on plaintiff's NYCHRL retaliation claim is also denied.  To prove a retaliation claim under the NYCHRL, a plaintiff must show that he took a protected action "and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Mihalik*, 715 F.3d at 112 (citations omitted).  Defendants have not argued that plaintiff's activity in requesting an accommodation was unprotected under the NYCHRL.  *See* Defs.' Mem. 23-24; *cf. Piligian v. Icahn Sch. of Med. at Mt. Sinai*, 490 F. Supp. 3d 707, 722 (S.D.N.Y. 2020) (describing disagreement among courts over whether requests for accommodations were covered under the NYCHRL before 2019 amendments made such coverage explicit). Instead, defendants argue only that plaintiff's NYCHRL retaliation claims are deficient for the same reasons argued with respect to his ADA retaliation claims—that defendants articulated legitimate, non-retaliatory reasons for their actions and that plaintiff cannot demonstrate that those reasons are pretextual.  Therefore, for substantially the same reasons that factual disputes preclude summary judgment for plaintiff on

the ADA retaliation claim, factual disputes preclude summary judgment on the NYCHRL retaliation claim.

## IV.    Federal Constitutional Claim

To the extent that plaintiff brings a First Amendment retaliation claim, *see* Compl ¶ 25 (alleging defendants' acts violated plaintiff's freedom of speech as guaranteed by the First Amendment), that claim is abandoned, *see* Defs.' Reply 2.  Plaintiff does not address defendants' arguments bearing on plaintiff's First Amendment retaliation claims.  *See* Defs.' Mem. 24; Pl.'s Mem.  Indeed, plaintiff affirmatively withdrew a similar claim under the New York Constitution, *see* Pl.'s Mem. 1 n.1, and it is not clear that plaintiff ever intended to bring a separate federal constitutional claim, *see* Compl. ¶¶ 24-29.  Based on the absence of any argument in defense of a free-speech claim in plaintiff's opposition brief, it is appropriate to infer that plaintiff has abandoned any First Amendment retaliation claim.  *Kovaco*, 834 F.3d at 143.

In any event, plaintiff has not pointed to evidence that he "spoke as a citizen on a matter of public concern," *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *see Huth v. Haslun*, 598 F.3d 70, 73-74 (2d Cir. 2010), as plaintiff must to prove a First Amendment retaliation claim.  At most, plaintiff appears to have engaged with defendants in a process to devise reasonable accommodations for himself.  But "speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." *Sousa v. Roque*, 578 F.3d 164, 174 (2d Cir. 2009) (quoting *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999)).  Notwithstanding the fact that plaintiff's request for accommodations "touch[ed] on a matter of general importance," *Montero v. City of Yonkers*, 890 F.3d 386, 400 (2d Cir. 2018)—the treatment of persons with disabilities—plaintiff's request for accommodations "[was] motivated by and dealt with [his] individual employment situation" and his complaints were "personal in nature," *Salpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d

23

Cir. 1993) (citation omitted).  The record does not indicate that plaintiff "wanted to debate issues of [disability] discrimination, that [he] . . . sought relief against pervasive or systemic misconduct by a public agency or public officials, or that [his] [speech] was part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention." *Ibid.* (internal quotation marks and citation omitted); *see Huth*, 598 F.3d at 74-75. Defendants have therefore carried their burden to show that plaintiff's evidence is insufficient on an essential element of the First Amendment retaliation claim.  *Nick's Garage, Inc.*, 875 F.3d at 114.

For those reasons, defendants are entitled to summary judgment on any First Amendment retaliation claim in the complaint.

## CONCLUSION

Summary judgment is granted to defendants on plaintiff's ADA disparate-treatment and First Amendment retaliation claims.  Plaintiff's ADA claim against Kwait, his claim under the New York State Constitution, and his hostile work environment claims are withdrawn and therefore dismissed.  Defendants' motion for summary judgment on plaintiff's remaining claims is denied.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: March 30, 2022
        Brooklyn, New York

24